THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ERIC YOST, individually and on
behalf of a class of similarly situated
individuals,

      Plaintiff,

v.

ANTHEM LIFE INSURANCE
COMPANY

      Defendant.

3:18-CV-1522
(JUDGE MARIANI)

## MEMORANDUM OPINION
### I. INTRODUCTION

Here the Court considers Defendant Anthem Life Insurance Company's Motion to Dismiss Plaintiff's Complaint (Doc. 11). With this Motion, Defendant asserts the above-captioned matter ("*Yost II*") should be dismissed because it is duplicative of the action docketed at 3:16-CV-00079 ("*Yost I*"). (Doc. 12 at 5.) The Court concludes Defendant's Motion is properly granted because *Yost II* is duplicative of *Yost I* in all relevant respects.

### II. BACKGROUND

The factual background set out in the *Yost I* Complaint (Doc. 1) is the same as that set out in the Amended Complaint in *Yost I* (Civ. A. No. 3:16-CV-00079 Doc. 26).[1]

---

[1] Hereafter, *Yost I*'s Civil Action No. will not be included in citation to a document in that case unless doing so is necessary for clarity.

Therefore, the recitation of facts recently set out the Memorandum Opinion considering a motion filed in *Yost I* (Doc. 94 at 6-7) is applicable here:

> Plaintiff Eric Yost was insured for disability benefits under a Group Plan issued by Defendant through Finisar Corporation, Plaintiffs former employer. (Doc. [1] ¶ 6.) On February 2, 2013, Plaintiff was injured in a motor vehicle accident, rendering him temporarily disabled. (*Id.* ¶ 7.) As a result of his temporary disability, Plaintiff submitted a claim for short term disability benefits to Defendant. (*Id.* ¶ 8.) Thereafter, Defendant paid disability benefits in the amount of $5,654.40 to Plaintiff for the period beginning February 4,2013 and ending April 23, 2013. (Id. ¶ 9.) As a result of his injury, Plaintiff sought damages against the alleged tortfeasor. (*Id.* ¶ 10.) The tortfeasor's insurer settled the action and made payment to Plaintiff in compensation for the personal injuries he sustained in the motor vehicle accident. (*Id.* ¶ 11.) Defendant then asserted a claim for reimbursement of the short term disability benefits paid to the Plaintiff in the amount of $6,997.25. (*Id.* ¶¶ 12,14.) The parties then attempted to negotiate a settlement as to the reimbursement Defendant asserted it was owed by Plaintiff. (*Id.* ¶¶ 14-20.) Defendant has continued to assert a claim for reimbursement of the short term disability benefits paid to the Plaintiff. (*Id.* ¶ [29].) As a result, Plaintiff's counsel "has been forced to refuse to distribute to Mr. Yost the money in dispute" (*id.* ¶ [30]), leaving Plaintiff "subject to suit and loss of benefits based on the dispute over the subject funds" (*id.*).

(Doc. 94 at 6-7.) Plaintiff seeks recovery on behalf of himself and similarly situated individuals. (Doc. 1 ¶ 5.) He avers that the subrogation demand "is contrary to the policy and law." (Doc. 1 ¶ 22.)

Plaintiff's Complaint contains five counts: Count I for Declaratory Relief related to "the policies and law" (Doc. 1 ¶¶ 70, 73); Count II for Violation of Employee Welfare Benefit Plan and Policy; Count III for Breach of Fiduciary Duty – Duty of Loyalty related to ERISA's fiduciary obligations; Count IV for Action for ERISA Relief; and Count V for Relief Demanded. (Doc. 1 at 16-41.)

2

## III. STANDARD OF REVIEW

With this Motion, Defendant moves the Court "to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and/or Fed. R. Civ. P. 16(c)(2)(A)." (Doc. 11 at 1.) Defendant does not identify the basis for seeking relief under Rule 16(c)(2)(A).[2] (See Docs. 11, 12.) Therefore, the Court considers Defendant's Motion under the applicable Rule 12(b)(6) standard.

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations and alterations omitted). "[T]he presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face' . . . Conclusory assertions

---

[2] Rule 16 provides in pertinent part that "[a]t any pretrial conference, the court may consider and take action on . . . matters [including] formulating and simplifying the issues, and eliminating frivolous claims or defenses." Fed. R. Civ. P. 16(c)(2)(A).

of fact and legal conclusions are not entitled to the same presumption." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 679).

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citing *Twombly*, 550 U.S. at 556 and *Iqbal*, 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (citing *Iqbal*, 556 U.S. 679).

## IV. ANALYSIS

Defendant argues that *Yost II* is based on the same disability benefits claim and the same accident as *Yost I*, and although the *Yost II* Complaint eliminates reference to the Pennsylvania Motor Vehicle Financial Responsibility Law "("MVFRL"), the violations of "law" asserted in *Yost II* are "hopelessly vague and conclusory." (Doc. 12 at 5.) Defendant also contends that *Yost II* should be dismissed because it is an impermissible attempt to circumvent the rules governing amendment of the pleadings in *Yost* I. (Doc. 12 at 11.)

### A. Duplicative Action

Defendant first argues that *Yost II* violates the "prohibition against claim-splitting as well as the Court's power to administer its docket." (Doc. 12 at 12.) Plaintiff responds that *Yost II* "is not claim-splitting" (Doc. 13 at 4) because the *Yost II* complaint "alleges new

4

rights, new claims, new causes of action based on different Anthem's [sic] actions and seeks different relief thaN [sic] *Yost*, with new facts supporting each claim" (*id.* at 5).

As explained by the United States Supreme Court in *Elgin v. Dep't of Treasury*, 567 U.S. 1, 34 (2012) (Alito, J., dissenting), "[p]laintiffs generally must bring all claims arising out of a common set of facts in a single lawsuit, and federal district courts have discretion to enforce that requirement as necessary 'to avoid duplicative litigation.'" *Id.* (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)) (citing *Stone v. Department of Aviation,* 453 F.3d 1271, 1278 (10th Cir. 2006) ("A plaintiff's obligation to bring all related claims together in the same action arises under the common-law rule of claim preclusion prohibiting the splitting of actions"); *see also* 18 C. Wright et al., Federal Practice and Procedure § 4406, p. 40 (2d ed.2002, Supp.2011) (discussing "principles of 'claim splitting' that are similar to claim preclusion, but that do not require prior judgment")). Thus, "[a]s part of its general power to administer its docket, a district court may dismiss a duplicative complaint." *Fabics v. City of New Brunswick*, 629 F. App'x 196, 198 (3d Cir. 2015) (not precedential) (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976).

In *Walton v. Eaton Corp.,* 563 F.2d 66 (3d Cir.1977), the Third Circuit Court of Appeals explained that a plaintiff was prohibited from "maintain[ing] two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Id.* at 70. As noted by a later panel of the Circuit Court, *Walton* "was intended

5

to fill the gap when duplicative claims are brought in the course of ongoing litigation." *McKenna v. City of Philadelphia*, 304 F. App'x 89, 94 (3d Cir. 2008) (not precedential). The gap is created because "*res judicata* and collateral estoppel apply only to final judgments," so when a second action is filed before the first is concluded issue and claim preclusion do not apply. *Id.*

In *Walton*, the second complaint relied on the same basic facts but added a new claim and sought additional relief. 563 F.2d at 69-70. The Circuit Court found the differences were not sufficient to allow the plaintiff to continue with both suits. *Id.* Relying on *Walton*, *McKenna* found the plaintiff improperly attempted to file a second complaint where he added a First Amendment free speech claim to his Title VII discrimination claim in the second complaint. 304 F. App'x at 92. The Circuit Court panel concluded the second action was duplicative because the plaintiff relied "on the same operative facts and legal principles, *viz.*, the defendants retaliated against him for reporting unlawful discrimination." *Id.* *McKenna* also found that the plaintiff's attempt to expand the scope of damages did not save the second action. *Id.*

Both *Walton* and *McKenna* identified available procedures for handling a second action which is substantially identical to a pending case: either stay the second case, consolidate it with the first case, or dismiss the second case without prejudice. *McKenna*, 304 F. App'x at 89; *Walton*, 563 F.2d at 70-71.

6

The factual background set out above, see supra pp. 1-2, indicates that the operative facts are the same in Yost I and Yost II. In Yost II, Plaintiff seeks recovery on behalf of himself and similarly situated individuals Doc. 1 ¶ 5) as he did in Yost I (Doc. 26 ¶ 5). In Yost I, Plaintiff asserts that the subrogation demand "is improper as a matter of law and as a matter of policy as the Right of Recovery provision of the Group Plan is not enforceable and forms no basis for any right of reimbursement under Pennsylvania law or under contract." (Doc. 26 ¶ 22.) In Yost II, Plaintiff avers that the subrogation demand "is contrary to the policy and law." (Doc. 1 ¶ 22.)

In Yost II, the Complaint contains five counts: Count I for Declaratory Relief related to "the policies and law" (id. ¶¶ 70, 73); Count II for Violation of Employee Welfare Benefit Plan and Policy; Count III for Breach of Fiduciary Duty – Duty of Loyalty related to ERISA's fiduciary obligations; Count IV for Action for ERISA Relief; and Count V for Relief Demanded. (Doc. 1 at 16-41.) In Yost I, the claims in the Amended Complaint (Doc. 26) surviving Defendant's motion to dismiss (Doc. 30) are Count II (Declaratory Relief) related to the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), Count III (Violation of Employee Welfare Benefit Plan and Policy) related to the short term disability plan at issue ("the Employee Welfare Benefit Plan" (Doc. 26 ¶ 97)) and ERISA, and Count V (Breach of Fiduciary Duty – Duty of Loyalty) related to ERISA's fiduciary obligations. (Doc. 39 ¶ 5.)

Based on a comparison of the factual and legal averments set out in *Yost I* and *Yost II*, the Court concludes that *Yost II* is properly dismissed without prejudice. As set out above, both cases are based on the same operative facts. Even though Plaintiff seeks to distinguish the cases on the basis that "[t]he underlying basis of *Yost I* is Anthem Life's violation of 75 Pa. C.S. § 1720" (Doc. 13 at 15) whereas "[t]he underlying basis of *Yost II* is Anthem Life's violation of the terms of its own insurance policy (*id.*), the distinction does not acknowledge the fundamental fact that *Yost I* also alleged Defendant's policy violations. *Yost I* asserts that the subrogation demand "is improper as a matter of law and as a matter of *policy* as the Right of Recovery provision of the Group Plan is not enforceable and forms no basis for any right of reimbursement under Pennsylvania law or under *contract*" (Doc. 26 ¶ 22 (emphasis added)). Importantly, both the Amended Complaint in *Yost I* and the Complaint in *Yost II* contain counts for a "Violation of Employee Welfare Benefit Plan and Policy" related to the short term disability plan at issue. (*Yost I* Doc. 26 at 20; *Yost II* Doc. 1 at 21.) These similarities and the identical factual averments on which the actions are based convinces the Court that Plaintiff is attempting to "maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant," *Walton*, 563 F.2d at 70.[3]

---

[3] Although Plaintiff identifies many differences between *Yost I's* Amended Complaint (Doc. 26) and *Yost II's* Complaint (Doc. 1), they do not go to the core similarities upon which the Court's determination is based. (*See* Doc. 15 at 5-9.)

In rejecting Plaintiff's attempt to differentiate his filings, the Court notes that his reliance on caselaw which looked only at whether the suits involved, "the same parties; the same rights asserted; and the same relief prayed for" is misplaced . (Doc. 13 at 3 (citing *United States v. The Haytian Republic*, 154 U.S. 118 (1894)).) Despite Plaintiff's assertion that *The Haytian Republic* supports his position, *Walton* relied on the 1894 Supreme Court decision in stating noted that "it is clear that [the plaintiff] had no right to maintain two separate actions involving the same subject matter at the same time in the same court against the same defendant." 563 F.2d at 70.

As Defendant aptly stated, Plaintiff's authority is outdated and does not acknowledge the fact that "'[d]efinitions of what constitutes the same cause of action have not remained static over time.'" (Doc. 14 at 6 (quoting *Nevada v. United States*, 463 U.S. 110, 13 (1983)).) Elaborating on the development of the term "cause of action," the Supreme Court noted in *Nevada* that

> [u]nder the first Restatement of Judgments § 61 (1942), causes of action were to be deemed the same "if the evidence needed to sustain the second action would have sustained the first action." In the Restatement (Second) of Judgments (1982), a more pragmatic approach, one "not capable of a mathematically precise definition," was adopted. *Id.* § 24, comment b. Under this approach causes of actions are the same if they arise from the same "transaction"; whether they are products of the same "transaction" is to be determined by "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* § 24.

463 U.S. at 130 n.12.

Clearly the more pragmatic transactional approach is consistent with *Elgin's* statement that federal district courts have discretion to enforce the requirement that "[p]laintiffs generally must bring all claims arising out of a common set of facts in a single lawsuit" as necessary to avoid duplicative litigation. 567 U.S. at 34. The more expansive definition of "cause of action" in the pragmatic approach is also consistent with the Third Circuit's consideration of what constitutes the same cause of action and its reliance on the Restatment (Second) of Judgments:

> [i]n deciding whether two suits are based on the same "cause of action," we take a broad view, looking to whether there is an "essential similarity of the underlying events giving rise to the various legal claims." *United States v. Athlone Indus.,* 746 F.2d 977, 984 (3d Cir.1984); *see also* Restatement (Second) of Judgments § 24 cmt. a ("The present trend is to see claim in factual [as opposed to legal] terms and to make it coterminous with the transaction regardless of the number of substantive theories ... that may be available to the plaintiff ...."); *id.* cmt. b ("In general, the expression ['transaction'] connotes a natural grouping or common nucleus of operative facts.").

*CoreStates Bank, N.A. v. Huls Am., Inc.,* 176 F.3d 187, 194 (3d Cir. 1999). Thus, the Court finds that Plaintiff's narrow view of a district court's ability to manage its docket is not consistent with more recent Supreme Court and Third Circuit precedent on the issue.

Finally, the Court finds *Walton's* directive concerning circumvention of rules pertaining to amendment of complaints particularly applicable here given that Plaintiff filed *Yost II* on July 31, 2018—the same day as Plaintiff's counsel withdrew Plaintiff's Motion for Leave of Court to Amend the Complaint (Doc. 55) in *Yost I* (Doc. 71). As will be discussed

in greater detail below, Defendant filed a brief in opposition to Plaintiff's motion (Doc. 65) and, at Plaintiff's request, the Court conducted a teleconference regarding Plaintiff's motion on July 18, 2018, at which Defendant's counsel raised strenuous opposition to Plaintiff's motion and the Court expressed skepticism about the success of the motion based on Plaintiff's supporting brief and the substantial arguments raised by Defendant in opposition to the motion (*see, e.g.*, Doc. 70 at 5-8).

## B. Circumvention of Rules

*Walton's* caution that a district court should "carefully insure[ ] that the plaintiff does not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed" 563 F.2d at 71, takes on special significance given the procedural history of *Yost I* and the filing of *Yost II*. Because, "the court must insure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints," *id.*, the Court will set out the relevant recitation provided by Defendant, a recitation which Plaintiff does not dispute.

> On July 3, 2018, long after the deadline for amending pleadings and on the eve of the July 5, 2018 dispositive motive deadline, Plaintiff filed a motion for leave to file a second amended complaint. *Yost I*, Doc. No. 55. Anthem Life objected to Plaintiff's motion for leave to file the second amended complaint because the requested amendment was egregiously late, it would have prejudiced Anthem Life, and it did not otherwise satisfy Fed. R. Civ. P. 15(a). Anthem Life filed its brief in opposition on July 17, 2018. *See Yost I*, Doc. No. 65. . . . [O]n July 31, 2018, Plaintiff voluntarily withdrew his motion for leave to file the second amended complaint. *See Yost I*, Doc. No. 71. B. Yost II.

11

> On July 31, 2018, the very same date that Plaintiff withdrew his motion for leave to file the second amended complaint in *Yost I*, Plaintiff filed the instant Complaint in this action. On September 24, 2018, and within the time approved by the Court for filing a responsive pleading, Anthem Life filed its Motion to Dismiss the Complaint in this action. *Yost II*, Doc. No. 11.

(Doc. 12 at 7.)

Here there is a clear and direct connection between Plaintiff's withdrawal of the motion in *Yost I* and the filing of *Yost II* based on the date both actions occurred. More importantly, an air of impropriety attends these actions because they came on the heels of the Court's indication to Plaintiff's counsel that he "had not carried the day" with his brief in support of the motion (Doc. 70 at 6) and the "arguments raised by the defendant would provide a sufficient basis to deny" the motion (*id.* at 8). Though the Court emphasized the importance of filing a reply brief (*id.* at 6, 8) and Plaintiff's counsel stated that he intended to do so (*id.* at 6), no reply brief was filed. Rather, Plaintiff filed the Complaint in *Yost II* which is almost identical to the proposed second amended complaint in *Yost I*. (*Compare Yost I* Doc. 55-1, *with Yost II* Doc. 1.)

Plaintiff does not contest that the proposed Second Amended Complaint in *Yost I* and the Complaint in *Yost II* are basically the same. (*See* Doc. 13 at 10-12.) However, Plaintiff seeks to diminish the circumvention aspect of the later filing by arguing that Defendant asserted in *Yost I* that the proposed Second Amended Complaint presented a "fundamentally different" case in that it added "new theories, new violations of policy provisions, new class definitions, and new forms of relief that would 'fundamentally alter' the

case and 'force Anthem Life to begin litigating the case all over again.'" (Doc. 13 at 11-12 (quoting *Yost I*, Doc. 65 at 14-15).)

The Court finds Plaintiff's argument unpersuasive. Based on the "cause of action" guidance set out above and the general rule that a plaintiff "must bring all claims arising out of a common set of facts in a single lawsuit," *Elgin*, 567 U.S. at 34, the differences noted do not remove the *Yost II* complaint from the "duplicative action" realm. See *supra* p. 8 & n.3. Further, as Defendant asserts in its reply brief,

> Anthem Life's Motion is not inconsistent with its opposition to Plaintiff's motion to amend in *Yost I*. In *Yost I*, Anthem Life did not object to the proposed amendment of Plaintiff's individual claim on the ground that it would have raised a separate transaction, or involved separate underlying events. Anthem Life objected because it would have "drastically expand[ed] the potential scope of class members to include insureds residing outside Pennsylvania who received disability benefits unrelated to motor vehicle accidents." See *Yost I*, Doc. No. 65 at 19. Moreover, even with respect to Plaintiff's individual claim, Anthem Life merely argued that it was not required to "defend against Plaintiff's new theories and claims it did not previously know it was defending against." *Id.*; see also, e.g., *Johnson v. Methodist Med. Ctr. of Ill.*, 10 F.3d 1300, 1304 (7th Cir. 1993) ("There must be a point at which a plaintiff makes a commitment to the theory of its case."). Because of Plaintiff's delay in raising its new theories, the proposed amendment in *Yost I* would have prejudiced Anthem Life, even though Plaintiff's individual claims in *Yost I* and *Yost II* arise from the same transaction and same underlying events.[4]

---

[4] Defendant notes that,

> despite Plaintiff's claim that his new theories "came as a result of the deposition testimony of Louise Patton on June 14, 2018," see Yost II, Doc. No. 13 at 5, Plaintiff's new theories are, in reality, premised on facts that were in his possession since prior to the filing of his original Complaint in Yost I. Indeed, the alleged "new" facts are not new at all, but simply derive from the same actions of Anthem Life demanding recovery of previously paid disability benefits.

(Doc. 14 at 12 n.3.)

13

(Doc. 14 at 11.)

In these circumstances, the Court concludes that Plaintiff's filing of *Yost II* indicates an attempt to "expand the procedural rights he would otherwise would have enjoyed," *Walton*, 563 F.2d at 71. The second filing came on the heels of the Court's indication that the motion to file a second amended complaint would not likely be granted on the basis of the briefs submitted and the teleconference conducted. (Doc. 70 at 6-8.) In other words, when Plaintiff's attempt to amend pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure (*see* Docs. 55, 56) looked doubtful, he filed a new action which the Court views as "the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints," *Walton* 563 F.2d at 71.

## V. CONCLUSION

Based on the foregoing discussion, the Court concludes that *Yost II* is impermissibly duplicative of *Yost I*. Therefore, Defendant Anthem Life Insurance Company's Motion to Dismiss Plaintiff's Complaint (Doc. 11) will be granted. The Court will dismiss *Yost II* without prejudice, an option for the disposition of a duplicative action sanctioned by the Third Circuit Court of Appeals. *Walton*, 563 F.2d at 70; *McKenna*, 304 F. App'x at 94. An appropriate Order is filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge